# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CURTIS LEE WATSON,**
    Petitioner,

v.                                                                                              Civil Action No. 1:14-cv-114

**TERRY O'BRIEN,**
    Respondent.

## REPORT AND RECOMMENDATION

On June 27, 2014, the *pro se* petitioner, Curtis Lee Watson ("Petitioner"), an inmate incarcerated at USP Hazelton in Bruceton Mills, West Virginia, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241. (Docket No. 1.) That same day, the Clerk of the Court mailed a Notice of Deficient Pleading to Petitioner, enclosing an application to proceed *in forma pauperis* ("IFP"), a Prisoner Trust Account Report, and a form § 2241 petition. The Notice advised Petitioner that failure to pay the $5.00 filing fee or to file the forms provided to him within twenty-one (21) days might result in dismissal of his case. (Docket No. 5.)

Petitioner returned the forms provided to him on July 7, 2014. On July 8, 2014, the undersigned entered an Order granting Petitioner's motion to proceed IFP. (Docket No. 10.) That same day, the undersigned ordered Respondent to show case as to why the writ should not be granted. (Docket No. 11.) After receiving an extension of time, Respondent filed a "Motion to Dismiss, or in the Alternative, for Summary Judgment" and memorandum in support on August 27, 2014. (Docket Nos. 18 and 19.) On September 2, 2014, the undersigned issued notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), informing Petitioner of his right to file material responsive to Respondent's motion to dismiss. (Docket No. 23.) Petitioner filed two responses on September 4 and 12, 2014 (Docket Nos. 24 and 26), and also filed a motion for summary judgment

on November 26, 2014 (Docket No. 27). This matter is ripe for review and is before the undersigned for a Report and Recommendation pursuant to Local Rule of Prisoner Litigation Procedure 2.

## I. Facts

On August 10, 1978, the Superior Court for the District of Columbia ("D.C. Superior Court") sentenced Petitioner, in Case Number 91888-76, to two (2) terms of 5-15 years for Burglary I while Armed (Counts A & D), running consecutively to each other; to two additional 5-15 terms for Assault with a Dangerous Weapon (Counts F & I), running concurrent to each other and to Count D; and to a 40-month to 10-year term for Assault with Intent to Kill (Count C), running concurrently to Count A. The total aggregate term for this case was ten (10) years minimum to thirty (30) years of imprisonment. (Docket No. 21 at 2.)

Also on August 10, 1978, in Case Number 69971-77, the D.C. Superior Court sentenced Petitioner to a term of twenty (20) years (Count B) for Murder in the First Degree while Armed; and a one-year sentence for Carrying a Pistol while Armed (Count C). Both sentences were to run consecutive to the sentences imposed in Case Number 91888-76. Accordingly, Petitioner's sentences were aggregated to a minimum term of thirty (30) years and a maximum term of life imprisonment. (Id.)

On August 29, 1988, Petitioner escaped from confinement while serving his sentence at the Lorton Reformatory.[1] (Id. at 3.) He was arrested by members of the United States Marshal Service for the District of Arizona on October 31, 1995. (Id.) On March 15, 1996, Petitioner was sentenced

---

[1] The full name of that facility was the D.C. Correctional Facility at Lorton. The Balanced Budget Act of 1997 required D.C. officials to begin transferring prisoners as soon as possible and to close Lorton within four (4) years. The prison closed in 2001, and D.C. inmates are now housed in Bureau of Prisons facilities.

in the United States District Court for the Eastern District of Virginia to twelve (12) months incarceration for escape, to run consecutively to any other present or previous sentences. (Id.)

Initially, the Bureau of Prisons ("BOP") calculated Petitioner's parole eligibility date to be February 25, 2005. (Docket No. 19-1 at 8.) Based upon that calculation, Petitioner had an initial parole hearing on November 1, 2004. (Id. at 9.) On November 16, 2004, the United States Parole Commission (the "Commission") denied Petitioner parole and set a reconsideration hearing for November 2007. (Id. at 14.)

After a reconsideration hearing on October 29, 2007, the Commission ordered that Petitioner be paroled "effective December 9, 2007 after the service of 353 months to the consecutive 12 month term." (Id. at 17.) Subsequently, however, the BOP determined that Petitioner was not eligible for parole until May 27, 2012, because of the time he spent in escape status. Therefore, on December 18, 2007, the Commission voided its Notice of Action from November 20, 2007. (Id. at 19.)

On September 12, 2011, the BOP calculated Petitioner's parole eligibility date to be April 27, 2012. (Id. at 4.) Based upon that date, Petitioner had a initial parole hearing on October 21, 2011. (Id. at 20.) On November 30, 2011, the Commission denied Petitioner parole and set a reconsideration hearing for October 2014.[2] (Id. at 25.)

## II    Contentions of the Parties

**A.    Petitioner's § 2241 Petition**

In his petition, Petitioner asserts that he is being illegally held "for parole hearings that do not apply." (Docket No. 7 at 1.) Specifically, Petitioner alleges that the Bureau of Prisons converted

---

[2] The record does not contain any information as to whether the reconsideration hearing occurred. Nevertheless, the outcome of such hearing is not before the Court at this time.

3

his thirty-year term of imprisonment "into a federal life sentence–then mandated [his] release as only by the Federal Parole Commission." (Id. at 5.) According to Petitioner, parole does not apply to him, and his rights have been violated by the "complete cessation of D.C. good-time." (Id. at 6.) Petitioner also argues that he "maxed out on this term (65%) or 19 years." (Id.) He requests "immediate release" as relief. (Id. at 8.)

**B.    Respondent's Memorandum**

Respondent asserts that Petitioner's petition should be denied for the following reasons:

1. Petitioner's claims that his D.C. sentence has been converted to a Federal term and that his 30 year sentence has been converted to a life sentence are without merit;

2. Petitioner's claims concerning the Parole Commission's authority to grant him parole should be dismissed as *res judicata*;

3. To the extent that Petitioner is challenging the Bureau of Prisons' computation of his sentence, the petition is successive and an abuse of the writ of habeas corpus; and

4. Even if considered on its merits, the Court should dismiss Petitioner's claim that the Bureau of Prisons erroneously computed his sentence.

(Docket No. 19 at 7-12.)

**C.    Petitioner's Responses and Motion for Summary Judgment**

In his first response, Petitioner asserts that he has "established the liberty interest right to be released with documentation that the D.C. and federal sentences have been served and release is mandated." (Docket No. 24.) His second response invokes "ex-post-facto protection on the basis . . . that no parole applied to his original D.C. sentence." (Docket No. 26.) Finally, Petitioner has filed a motion for summary judgment, alleging that his "right had been violated by the conduct of the United States Parole Commission and the B.O.P." (Docket No. 27.)

4

## III. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1999)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable," id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass

v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.     Motion for Summary Judgment**

Both the Supreme Court and the Fourth Circuit have recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party, as it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-52 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

### IV. Analysis

Prior to the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2244 authorized dismissal of a successive habeas petition that presented "no new grounds not heretofore presented and determined." McClesky v. Zant, 499 U.S. 467, 483 (1991). Prior to its amendment through AEDPA, § 2244(a) was applied to bar successive habeas petitions regarding challenges to actions of the Commission. See, e.g., Glumb v. Honstead, 891 F.2d 872, 873 (11th Cir. 1990); Poyner v. U.S. Parole Comm'n, 878 F.2d 275, 277 (9th Cir. 1989); Sacco v. U.S. Parole Comm'n, 639 F.2d 441, 442-43 (8th Cir. 1981).

As amended by AEDPA, § 2244(a) now provides:

> No circuit or district judge shall be required to entertain an application for writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for writ of habeas corpus, except as governed in section 2255.

A few circuit and district courts have held that § 2244(a) bars a subsequent § 2241 as a successive petition where the grounds raised in the subsequent petition were denied in a prior § 2241 action. See Valona v. United States, 138 F.3d 693, 695 (7th Cir. 1998); Chambers v. United States, 106 F.3d 472, 475 (2d Cir. 1997); Byrd v. Gillis, No. CIV.A. 97-4697, 1997 WL 698157, at *1 (E.D. Pa. Nov. 5, 1997). For a petition to be barred as successive under this provision, the same claims must have been raised and adjudicated on the merits in the petitioner's prior habeas proceedings. Kuhlmann v. Wilson, 477 U.S. 436, 444 n.6 (1986) (plurality opinion). Under the abuse-of-the-writ doctrine, a court may dismiss a subsequent petition when "a prisoner files a petition raising grounds that were

7

available but not relied upon in a prior petition, or engages in other conduct that disentitles him to the relief he seeks." Id. The Supreme Court has noted that the restrictions on successive petitions set forth in § 2244(a) "constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'" Felker v. Turpin, 518 U.S. 651, 664 (1996).

In 2009, while incarcerated at FCC Coleman in the Middle District of Florida, Petitioner filed two § 2241 petitions, which were consolidated for disposition. In those petitions, Petitioner asserted that both his sentence and his parole eligibility date had been improperly calculated and that he was entitled to immediate release. See Watson v. Warden, FCC Coleman-USP I, Nos. 5:09-cv-112-Oc-10TBS, 5:09-cv-200-Oc-10TBS, 2012 WL 5465993, at *1-2 (M.D. Fla. May 3, 2012). The District Court concluded that both Petitioner's D.C. sentence and parole eligibility date had been "properly computed." Id. at *2.

On appeal, Petitioner argued that "his 'old law sentences,' that is, the 1978 D.C. Superior Court sentences, were 'converted to a federal term of *life*.'" Watson v. Warden, FCC Coleman-USP I, 521 F. App'x 899, 903 (11th Cir. 2013). The Eleventh Circuit found that "[n]othing in the record supports Watson's claim that his indefinite aggregate term of thirty years to life has been converted by the BOP to a definite term of life." Id. Petitioner also claimed that he was only required to serve "19 years and 8 months," and that he was entitled to immediate release. Id. However, the Eleventh Circuit noted that Petitioner was required to serve, at a minimum, thirty (30) years of his D.C. aggregated sentence; that Petitioner had not completed that sentence; and that Petitioner had "yet to serve his consecutive twelve-month sentence for the 1996 escape conviction." Id.

As noted above, in the instant petition, Petitioner claims that his D.C. sentence was converted into a federal life sentence; that he "maxed out" at nineteen (19) years; that his sentence was

8

improperly calculated; and that he is entitled to immediate release. These claims are identical to those already denied by the Middle District of Florida and the Eleventh Circuit when considering Petitioner's prior § 2241 petitions. Indeed, Petitioner admits that he raised all of his instant claims in his prior § 2241 petitions. (Docket No. 7 at 7.) Petitioner cannot benefit from another "bite at the apple" just because he was transferred to USP Hazelton from FCC Coleman. Accordingly, the undersigned recommends that Petitioner's claims be denied and dismissed with prejudice as successive and as an abuse of the writ.

Petitioner also appears to assert that the Commission lacks authority to deny him parole. Petitioner previously raised this claim in a Complaint against the Commission filed in the United States District Court for the District of Columbia. Watson v. U.S. Parole Comm'n, 869 F. Supp. 2d 145, 148-49 (D.D.C. 2012). In a memorandum opinion granting the Commission's motion to dismiss, United States District Judge John Bates stated:

> It is well settled that the Commission "has had jurisdiction over parole matters of District of Columbia felons since August 1998." Ray v. U.S. Parole Comm'n, No. 11-2127, 2012 WL 252238, at *2 (D.D.C. Jan. 26, 2012) (citations omitted); see Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir. 1998) (discussing the transfer of parole jurisdiction for District of Columbia prisoners to the Commission). It may grant, deny, or revoke parole, and it may impose or modify conditions of parole for any felon who is eligible for parole or reparole under District of Columbia law. See D.C. Code § 24-131(a). The statutes under which the Commission operates "govern the execution of a judicially imposed sentence." Moore v. U.S. Parole Comm'n, No. 10-1987, 2011 WL 550003, at *1 (D.D.C. Feb. 10, 2011). The Commission is not a court; it merely exercises administrative authority over the execution of a sentence. See Maddox v. Elzie, 238 F.3d 437, 445 (D.C. Cir. 2001). Its actions neither usurp the authority of the sentencing court nor violate the separation of powers doctrine. See, e.g., Monroe v. District of Columbia, No. 12-0558, 2012 WL 1229333, at *1 (D.D.C. Apr. 11, 2012).

Id. at 149. Accordingly, it is clear that Petitioner's claim that the Commission lacks authority to deny him parole is without merit and should be denied.

## V. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Docket No. 18) be **GRANTED**, that Petitioner's motion for summary judgment (Docket No. 27) be **DENIED**, and that Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket No. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Petitioner by certified mail, return receipt requested.

DATED: December 17, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE